FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 27, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHERRIL W.,[1]<br><br>                    Plaintiff,<br><br>        v.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security,<br><br>                    Defendant. | No.    1:22-cv-3016-EFS<br><br><br>**ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS AND REMANDING THE MATTER FOR PAYMENT OF BENEFITS** |

Plaintiff Sherril W. appeals the denial of benefits by the Administrative Law Judge (ALJ). The parties agree the ALJ erred when analyzing the medical opinions, but the parties disagree about the appropriate remedy. After reviewing the record and relevant authority, the Court remands the case for payment of benefits from the alleged onset date of December 7, 2009.

/

---

[1] To address privacy concerns, the Court refers to Plaintiff by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

# I.    Background

Plaintiff alleges disability due to back pain, left leg pain and numbness, anxiety, depression, and medication side-effects, including headaches, dizziness, and nausea. Her back pain began after a work injury at Fred Meyers in 2005. After back surgery in 2006, she returned to work for about three years until she had a sudden onset of severe back pain in December 2009.[2] Due to her persistent back pain, Plaintiff reports that she must rotate between sitting, standing, and lying down throughout the day, she has to lay down several times a day and some days where she largely lies down, she has fallen when her left leg has given out, and she suffers from anxiety and depression due to concern about falling and not being able to work or interact with her family as she previously did.

Due to her pain and reduced functioning, Plaintiff protectively filed for disability insurance benefits in 2011, alleging an onset date of December 7, 2009.[3] At the date of last insured in 2009, Plaintiff was 50 years old.[4] Plaintiff's disability application has been denied three times by ALJs.[5] The first two disability denials were authored by ALJ Virginia Robinson; those decisions were subsequently

---

[2] AR 42, 64, 220, 430, 496.

[3] AR 167–70.

[4] During the pendency of this matter, Plaintiff's age category changed: first to "closely approaching advanced age" and now to "advanced age."

[5] AR 16–72, 109–21, 951–53, 988–1013, 1029–1117.

determined to contain error, and the matter was remanded for additional

administrative proceedings.[6]

After the second remand, the matter was assigned to ALJ Howard Prinsloo, who again denied disability. ALJ Prinsloo found:

- Step one: Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 7, 2009, through the date last insured of September 30, 2015.

- Step two: Plaintiff had the following medically determinable severe impairments: degenerative disc disease (status post history of laminectomy), affective disorder, and anxiety disorder.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work except she was further limited to:

  > occasional stooping, kneeling, crouching, crawling, and climbing ladders, ropes, or scaffolds; should avoid concentrated exposure to excessive vibration and workplace hazards, including dangerous machinery or unprotected heights; [and] . . . simple and well-learned tasks with superficial interaction with the public and coworkers (no extensive teamwork).

- Step four: Plaintiff was unable to perform any past relevant work.

---

[6] AR 536–56, 954–81.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as merchandise marker, production assembler, and housekeeping/cleaner.[7]

Plaintiff now appeals ALJ Prinsloo's denial of disability and asks for an immediate award of benefits.[8] The Commissioner concedes the ALJ erred when analyzing the medical opinions, but the Commissioner asks the Court to remand the matter for further administrative proceedings because there are evidentiary conflicts that must be resolved by the ALJ.[9]

## II.    Analysis

### A.    Remand Standard

When a harmful error occurs in the administrative proceeding, remand for further administrative proceedings is the usual course absent rare circumstances.[10] Three factors must be satisfied for the court to consider remand for payment of benefits:

(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to

---

[7] AR 905–31.

[8] ECF Nos. 1, 9.

[9] ECF No. 13.

[10] *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.[11]

When these factors are satisfied, the decision whether to remand for benefits or further proceedings is within the court's discretion, as it "is a fact-bound determination that arises in an infinite variety of contexts."[12]

## B.    Remand Analysis

The parties agree the second factor is satisfied: the ALJ failed—yet again—to provide legally sufficient reasons for rejecting several medical opinions.

As to the third factor, if the rejected medical opinions are credited as true, Plaintiff is deemed disabled. Dr. John Lyzanchuk, who has treated and managed Plaintiff's back pain, left leg pain and numbness, and resulting medication side-effects for more than a decade, authored medical opinions in 2014, 2017, and 2019. Dr. Lyzanchuk opined that Plaintiff would need to lie down 4–5 times during the workday, need to rotate between standing and sitting every 20–30 minutes, and miss more than 4 days of work per month due to her back and leg pain. In addition, Dr. Rox Burkett agreed that Plaintiff was unable to sustain work due to excessive

---

[11] *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

[12] *Treichler*, 775 F.3d at 1100 (quoting *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000)).

absences and her need to rest or lay down.[13] And examining physician Dr. Jesse McClelland opined that Plaintiff would struggle with attendance due to her pain and medication side-effects.[14] The vocational expert testified that that, when considering the opined limitations related to Plaintiff's absenteeism and need to lie down, she would be unable to perform gainful work.[15] Therefore, the third factor is satisfied.

As to the remaining first factor, the focus is whether the record has been fully developed and that no further administrative proceedings will serve a useful purpose.[16] As to developing the record, the Commissioner does not identify what additional evidence must be developed. The period at issue is from the alleged onset date of December 7, 2009, through the date last insured of September 30, 2015. This period began more than a decade ago and ended almost 7 years ago. No additional record development is needed for this period, as the record is expansive. For instance, the record contains Plaintiff's monthly treatment notes from Dr. Lyzanchuk that indicate very limited back use and other limitations, other treatment notes pertaining to spinal injections, imaging reports,

---

[13] AR 857–58.

[14] AR 325–30 ("She may struggle to maintain regular attendance at the workplace as she is barely able to leave the house and she is no longer able to drive.").

[15] AR 500–01.

[16] *Garrison*, 759 F.3d at 1020.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

consultative-examination reports, and reviewing opinions during that time frame and after.[17] Further, if the improperly discounted medical opinions by treating providers Dr. Lyzanchuk and ARNP Cari Cowin, examining physician Dr. McClelland, and reviewing physician Dr. Burkett, are credited as true, it is clear based on the vocational expert's testimony that Plaintiff is unable to sustain competitive work.

Although no record development is needed, the Commissioner submits there are evidentiary conflicts that require resolution by the ALJ on remand. "Administrative proceedings are generally useful where . . . there is a need to resolve conflicts and ambiguities."[18] The Commissioner argues that the following evidence conflicts with Plaintiff's claim of disability:

- Plaintiff reported that her back pain in 2010 had gotten progressively worse over the past couple of years, but she did not report back pain at her doctor visits until December 2009.

- The MRI findings were described as unremarkable and not significant, and the x-ray findings were mild.

---

[17] *See, e.g.*, AR 280–86, 325–30, 343–45, 786, 790, 796, 808, 811, 812, 854–58, 861, 869, 870, 874.

[18] *Treichler*, 775 F.3d at 1101.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

- An examining panel found Plaintiff's subjective complaints outweighed the objective findings on the imaging and did not indicate that further treatment was needed.

- Reviewing medical opinions found Plaintiff capable of light work with certain additional limitations.

- A physical examination in January 2010 found Plaintiff relatively healthy with full lower-leg strength, a negative straight-leg raise, and good gait.

- Plaintiff did not seek care from a specialist for her back pain.

- There was little evidence that Plaintiff had symptoms of or treatment for depression and serious anxiety.

- The mental-status examination findings were generally benign with normal concentration, persistence, pace, intellectual functioning, and thought process.[19]

The Court addresses each of these purported conflicts.

1.    <u>Back-pain reports</u>

The first purported conflict highlighted by the Commissioner takes Plaintiff's comments about her back pain during medical appointments out of context and fails to appreciate that, although Plaintiff's back pain initially subsided after her spinal surgery in 2006, she continued to have episodic back pain

---

[19] ECF No. 13.

and that after an incident on December 7, 2009, her back pain escalated and persisted.[20] After the disability onset date, Plaintiff consistently reported back pain and pain that extends to her left leg with occasional left-leg numbness. There are no evidentiary conflicts as to Plaintiff's back-pain reports that require resolution by the ALJ.

      2.    <u>Imaging results</u>

Next, contrary to the Commissioner's general statement that the MRI findings were described as unremarkable and the x-ray findings as mild, both the MRI and the x-ray in 2009 reveal impairments that contribute to Plaintiff's back pain. The MRI in December 2009 revealed mild degeneration and anterior bulging of the disc at T11-12, mild reactive changes involving L5 and S1 adjacent to the disc space, laminectomy defect on the left at L5-S1, moderate degeneration and small central and left paracentral protrusion of the L5-S1 disc with a small signal in the posterior annulus without significant stenosis or nerve root compression, and some mild facet arthrosis at L5-S1.[21] The lumbar x-ray performed within the same week revealed narrowing of the L5-S1 disc space, compatible with degenerative disc disease, and mild degenerative facet arthrosis of the lumbar

---

[20] AR 301, 297.

[21] AR 343. *See also* AR 455 (Dr. Rubin testifying that, following Plaintiff's 2006 hemilaminectomy, the 2009 and 2011 MRIs revealed laminar defect in L5/S1 on the left and a small central and left paracentral disc protrusion.).

spine and facet joints.[22] Thus, although there were mild and unremarkable findings, the imaging also revealed moderate degeneration and protrusion on the L5-S1 disc. There is objective medical evidence of conditions that contribute to Plaintiff's back and left-leg pain.[23] The imaging is not a source of conflict that requires resolution on remand by the ALJ.

### 3.    Examining panel findings

The Commissioner highlights that the two physicians, William Stump, M.D., and Chester McLaughlin, M.D., who conducted the independent medical examination (IME) for Washington Department of Labor and Industries' (L&I) purposes in August 2010 determined that Plaintiff's reported pain was not supported by the imaging. However, this IME must be read in the context it was issued, which was to determine if Plaintiff's increased back pain in 2009 was related to her 2005 work-place injury.[24] The IME was not concerned about injuries

---

[22] AR 345.

[23] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (recognizing that an ALJ cannot discount a claimant's symptom reports solely because they are not fully corroborated by the objective medical evidence).

[24] AR 316–17 (specifying that the purpose of the IME was only to address the specific work injury, which was identified as a herniated disc at L5-S1 impinging on the left S1 nerve root and for which surgery was performed in 2006, and to determine if the condition had worsened).

or conditions unrelated to her 2005 work-place injury. Thus, the IME and its statement that Plaintiff's pain was not medically supported must be considered in this limited context. Moreover, not only did the imaging reveal back impairments, but these physicians observed functional limitations, including camptocormia posture, palpated tension in the lumbar, severe tenderness in the low back, painful lumbar rotation and motion, severe back pain when laying supine and attempting to put her knee to her chest, back pain during the Patrick's maneuver, and severe back pain during supine straight leg raising with the left lower extremity.[25] These observations are consistent with, rather than contrary to, Plaintiff's symptom reports.

The IME's internal inconsistency—that it noted observed limitations, pain, and tenderness but found that the reported pain was not supported by the imaging related to her 2005 work-place injury—was remarked on by several medical providers. Treating ARNP Cari Cowin expressed her surprise that the IME reported Plaintiff's symptoms as subjective given the observed decreased sensation to the left lateral thigh and calf and a positive straight leg raise on the right at 30 degrees.[26] Similarly, the medical expert at the 2019 administrative hearing, Dr. Leonard Rubin testified that, absent the IME's contradictory statement about no basis for Plaintiff's subjective increased pain complaints, he would opine that

---

[25] AR 322.

[26] AR 304.

Plaintiff met listing 1.04(a) for a time period.[27] Also, Dr. Burkett found that the medical records supported Plaintiff's reported pain and lower leg problems and highlighted that leg pain can be from sensory nerves rather than motor nerves.[28] Therefore, on this record, which contains disabling opinions from several medical sources that must be credited as true given the ALJ's analytical errors,[29] the internally contradictory IME does not create a conflict requiring further administrative proceedings.

4.    Reviewing "light work" medical opinions

The Commissioner also highlights that the reviewing medical opinions completed by Guillermo Rubio, M.D., and Robert Hoskins, M.D. found Plaintiff capable of light work with certain additional limitations and therefore these light-work opinions conflict with the disabling opinions.[30] However, Dr. Rubio and Dr. Hoskins relied heavily on the aforementioned IME conducted by Dr. Stump and Dr. McLaughlin in August 2010, and another IME for L&I purposes conducted by Paul Reiss, M.D. in January 2011. For instance, Dr. Rubio and Dr. Hoskins noted that the most informative factors in assessing the credibility of Plaintiff's statements were the "marked non-physiological observations & no orthopedic,

---

[27] AR 462.

[28] AR 854–56.

[29] *See* AR 300, 303, 393–95, 847–49, 896.

[30] ECF No. 13 (relying on AR 74–89, 92-101).

neurologic or imaging explanation for subjective complaints noted" at the two IMEs and that the "EMG concluded there is no evidence for [left lower extremity] radiculopathy."[31] Yet, as discussed above, imaging revealed several back conditions, and tenderness and reduced range of motion was observed not only during the 2010 IME but during Plaintiff's appointments with Dr. Lyzanchuk and ARNP Cowin. Moreover, during the 2011 IME, Dr. Reiss described Plaintiff as a deconditioned female, who was uncomfortable at various times throughout the examination.[32] Dr. Reiss noted several abnormal findings, including straight leg raise mildly positive on the left at 30 degrees in the supine position, that Plaintiff rose from the chair with some difficulty, and that she walked with a somewhat stooped posture.[33] And, as Dr. Rubin testified to, a negative EMG did not necessarily correlate to a finding that Plaintiff did not suffer from radiculopathy, as Plaintiff's leg pain could be caused by the herniated disc irritating the nerve going down her left leg.[34]

Therefore, the record suggests that Dr. Rubio and Dr. Hoskins were either not aware of or did not account for the context and limitations of the IMEs conducted by Dr. Stump, Dr. McLaughlin, and Dr. Reiss. Because Plaintiff

---

[31] AR 82, 98–99.

[32] AR 309.

[33] AR 310.

[34] AR 468–70.

1  presented objective medical evidence showing the existence of medical impairments

2  that can reasonably be expected to produce her alleged pain and other symptoms,

3  Dr. Rubio's and Dr. Hoskin's light-work opinions do not create a conflict

4  necessitating further administrative proceedings, considering the medical opinions

5  that are to be credited as true.[35]

6      5.    January 2020 physical examination

7      The January 2010 physical examination also does not create a conflict

8  necessitating administrative proceedings. As noted by the Commissioner, the

9  examination note contains some normal findings,[36] however, the examiner also

10  observed:

> Palpation elicits a fairly significant discomfort and pain on the left
> over the L4-5 and the L5-S1 facet joints. L5-S1 is more tender than
> L4-5. With hyperextension and lateral rotation, this does exacerbate
> the patient's pain on the left. . . . On the left with straight leg raising
> at 50 degrees, she reports some pulling sensation in her left hip, but it
> is not really in a radicular pattern.[37]

---

[35] *See Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004).

[36] That Plaintiff appeared "relatively healthy" at the January 2010 examination does not conflict with her claim of disability onset the month prior, as the Commissioner fails to explain why deconditioning would occur within one month of the alleged disability date. AR 297. And in fact, one year later at the January 2011 IME with Dr. Reiss, Dr. Reiss noted that Plaintiff was deconditioned. AR 309.

[37] AR 297–98.

The normal findings highlighted by the Commissioner do not create a conflict necessitating administrative proceeding given the abnormal findings during the same examination, which were consistent with Plaintiff's reported symptoms. Moreover, the provider recommended that Plaintiff receive spinal injections and physical therapy.[38] Plaintiff abided by this treatment plan, but treatment did not provide lasting relief.[39]

6. <u>Specialist re: back pain</u>

The Commissioner highlights that Plaintiff did not seek care from a specialist for her back pain. However, the record reflects that in addition to her monthly appointments with Dr. Lyzanchuk, Plaintiff received the recommended injections and physical therapy, both of which did not provide lasting relief.[40] A second spinal surgery was recommended, but Plaintiff at that point did not have medical insurance or the financial means to pay for the second spinal surgery.[41] Therefore, Plaintiff had good cause for not following through with the recommendation to have a second spinal surgery.[42]

---

[38] AR 298.

[39] AR 280–86.

[40] AR 280–86.

[41] AR 43–44, 452, 481, 1044.

[42] *See Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989); Social Security Rlg. 18-3p: Titles II and XVI: Evaluation of Symptoms in Disability Claims.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

### 7.    Treatment for depression and anxiety

Similarly, the Commissioner's argument that there was little evidence that Plaintiff had symptoms of or treatment for depression and serious anxiety is undermined by the fact that Plaintiff did not have health insurance or the financial means to pay for mental-health treatment to assist with depression and anxiety.[43] Moreover, Plaintiff's depression and anxiety were rooted in her physical pain, concern about falling, and that she was no longer able to financially contribute to the household, help with household tasks, and engage in physical activities with her family.[44] On this record, Plaintiff's sparse mental-health treatment does not create a need for further administrative proceedings.

### 8.    Mental-status examinations

The Commissioner also highlights that the mental-status examination findings were generally benign. Again, the Commissioner fails to appreciate that Plaintiff's depression and anxiety were rooted in her physical limitations and pain, not cognitive or other psychological limitations. For example, during the psychological examination in October 2011, Dr. McClelland noted that Plaintiff

---

[43] AR 507.

[44] *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding the ALJ erred by rejecting the claimant's symptoms resulting from anxiety, depressive disorder, and PTSD on the basis that the claimant performed cognitively well during examination and had a generally pleasant demeanor).

was in obvious pain, shifting from seated to standing positions.[45] Dr. McClelland opined that "[t]he presence of severe chronic pain significantly limits treatment options and will make it virtually impossible for her depression to go into remission unless her pain is also treated to remission."[46] There is no dispute that Plaintiff's depression and anxiety were rooted in her back and leg pain and resulting limitations and, therefore, the normal findings during mental-status examinations do not necessitate further administrative proceedings.

9.    Conclusion

In summary, the purported conflicts highlighted by the Commissioner do not serve as a basis for additional administrative proceedings. The ALJ failed to provide legally sufficient reasons for rejecting the medical opinions. When such opinions are credited as true, Plaintiff has been unable to sustain competitive work.[47] There are no outstanding issues to be resolved.[48]

---

[45] AR 325.

[46] AR 329. Largely based on Dr. McClelland's examination, Dr. Miller Garrison opined at the 2019 hearing that Plaintiff met a listing for a 1–2-month window based on her anxiety, depression, and attendance difficulties. AR 446–51.

[47] *See Moisa*, 367 F.3d at 887 (awarding benefits).

[48] *See Benecke v. Barnhart*, 379 F.3d 587, 595–96 (9th Cir. 2004) (recognizing that additional proceedings are not necessary if the credited evidence establishes that the claimant is unable to maintain employment due to pain and other symptoms).

### III.    Conclusion

Remand for an award of benefits is appropriate. The Commissioner had three opportunities to consider the record, and two opportunities to remedy the analytical errors identified by the court. There is no useful purpose in remanding for furthering proceedings.[49] The credited medical opinions and remaining medical and vocational record establish disability as of the alleged onset date.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 9**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for immediate calculation and award of benefits from the alleged disability onset date.

4.    The case shall be **CLOSED**.

IT IS SO ORDERED.  The Clerk's Office is directed to file this order and provide copies to all counsel.

**DATED** this 27th day of October 2022.

_Edward F. Shea_
_____
EDWARD F. SHEA
Senior United States District Judge

---

[49] *See Vasquez v. Astrue*, 572 F.3d 586, 593–94 (9th Cir. 2009).